DOC ID #: ▇▇▇▇▇▇▇

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____(Seal)
MARIOWE CUESTAS                        - Borrower

_____(Seal)
                                       - Borrower

_____(Seal)
                                       - Borrower

_____(Seal)
                                       - Borrower

VMP®-57R (0401).01 CHL (06/04)     Page 3 of 3     Form 3170 1/01

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 05/18/2007
CASE #:
DOC ID #:
BORROWER: MARIO E. CUESTAS
PROPERTY ADDRESS: 2424/2426 CINCINNATI AVE
SAN ANTONIO, TX 78228-5401

Branch #: 0000844
2380 PERFORMANCE DR RGV-C 844
RICHARDSON, TX 75082
Phone: (888)973-8383
Br Fax No.: (972)781-3683

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)

# EXHIBIT 'A'

File No.: 4767293 (NTN)
Property: 2424 Cincinnati Avenue, San Antonio, TX 78228

The East 31 feet of Lot 11, and the West 50 feet of Lot 12, Block 14, New City Block 9234, UNIVERSITY PARK SUBDIVISION UNIT TWO, City of San Antonio, Bexar County, Texas, according to map or plat thereof recorded in Volume 2222, Page(s) 172, Deed and Plat Records of Bexar County, Texas.

A.P.N. 09234-014-0110

```
Doc# 20070120392 Fees: $112.00
05/25/2007    10:59AM # Pages 25
Filed & Recorded in the Official Public
Records of   BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK
```

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

MAY 2 5 2007

*Gerry Rickhoff*
COUNTY CLERK BEXAR COUNTY, TEXAS

4767293

1 of 1

After Recording, Mail To:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

This Document Prepared By:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067
Tatiana Vakidis

Parcel ID Number:

_____ [Space Above This Line For Recording Data] _____

Loan No:

Original Loan Amount: $75,000.00

## LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

This Loan Modification Agreement ("Agreement"), made this day of , between **MARIO CUESTAS** ("Borrower") and **NATIONSTAR MORTGAGE LLC**, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated _____, ____ and recorded in _____, of the **Official Records (Name of Records)** of _____ **County, TX (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**2424/2426 CINCINNATI AVE, SAN ANTONIO, TX 78228,**
(Property Address)
the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300b 08/14

Form 3179 1/01 (rev. 4/14)
(page 1 of 5)

# EXHIBIT C

follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **September 1, 2014**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$90,178.43**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$24,628.44** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$65,549.99**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.625%**, from **September 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$299.98**, beginning on the **1st** day of **October, 2014**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.625%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **September 1, 2054**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security